**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**TANYA MONIQUE LUCAS**

                                        **Plaintiff,**                                        **19-CV-195Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## BACKGROUND

Plaintiff applied for disability insurance and supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), alleging disability as of September 2, 2014, at the age of 33, due to a back and neck injury, depression, chronic migraines and nausea. Dkt. #6, p.87.

On September 15, 2017, plaintiff waived her right to representation and testified, along with an impartial vocational expert ("VE"), Timothy Mahler, at an

administrative hearing before Administrative Law Judge ("ALJ"), Bryce Baird. Dkt. #6, pp.33-84. Plaintiff testified that she was disabled due to a back and neck injury as well as depression, migraines and nausea, all of which began when she was rear-ended while stopped at a red light on August 23, 2014. Dkt. #6, pp.48-49 & 57-58. She testified that she has lost about 100 pounds because of the nausea from migraines. Dkt. #6, pp.66-67. She is constantly stressed, thinking about her pain. Dkt. #6, p.47. She experiences a sharp pain shooting up her leg into her back when she walks. Dkt. #6, p.74. She also experiences pain when she sits for a long period of time and when she sleeps. Dkt. #6, p.76. She can't lift or carry anything. Dkt. #6, p.74. If she isn't in pain, it is because she is on her medication, which makes her "super drowsy and relaxed." Dkt. #6, pp.75-76. She is unable to do things with her son or work or interact with people or do the things that she loves without feeling pain or thinking about being in pain or taking medication. Dkt. #6, p.75. She is a college graduate. Dkt. #6, p.49. She has a license but does not drive. Dkt. #6, p.49. She lives with her boyfriend and their four year old son. Dkt. #6, p.50.

The VE testified that plaintiff's past relevant work as a data analyst was a skilled, sedentary position, although plaintiff testified that she performed this position at a medium exertion; her past work as a technical support representative and customer complaint clerk were skilled sedentary positions; and her mail sorter position was a semi-skilled position which plaintiff performed at a heavy exertion level. Dkt.#6, pp.78-79. When asked to assume an individual of plaintiff's age, education and past work experience who could lift and carry up to 10 pounds on occasion and up to 5 pounds frequently; who could sit for up to six hours in an 8-hour work day and stand or walk up to

2 hours in an 8-hour work day; who was limited to occasional climbing of ramps or stairs, no climbing of ladders, ropes or scaffolds, occasional stooping and crouching and no kneeling or crawling, with no exposure to excessive vibration, unprotected heights or moving machinery; and who would be limited to simple, routine tasks that can be learned after a short demonstration or within 30 days, the VE testified that plaintiff would not be able to perform her past relevant work because the sedentary work she had performed was skilled and the other jobs involved heavy exertion, but plaintiff could perform unskilled sedentary work as a document preparer, addresser, pari-mutuel ticket checker or charge account clerk. Dkt. #6, pp.79-80. If plaintiff would be off-task for more than 20% of the workday or absent more than one day a month, the VE testified that plaintiff would be unable to sustain employment. Dkt. #6, pp. 81-82.

The ALJ rendered a decision that plaintiff was not disabled on May 7, 2018. Dkt. #6, pp.12-26. The Appeals Council denied review on December 20, 2018. Dkt. #6 p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 13, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501

(2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to

the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 2, 2014; (2) plaintiff's history of whiplash injury, migraine headaches, disc bulges of the cervical and lumbar spine and facet arthrosis of the lumbar spine constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform sedentary work and can lift ten pounds occasionally and 5 pounds frequently, sit for up to 6 hours and stand or walk for up to 2 hours in an 8-hour day, occasionally climb ramps or stairs, occasionally stoop and crouch, never climb ladders, ropes or scaffolds, never kneel or crawl, never be exposed to excessive vibration or hazards such as unprotected heights or moving machinery and is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days; and (5) plaintiff was not capable of performing her past work as a data analyst, technical support representative, customer clerk or mail sorter, but could work as a document preparer, addressor, pari-mutuel ticket checker or charge account clerk, each of which were unskilled jobs requiring sedentary exertion, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.17-26.

Plaintiff argues that the ALJ failed to properly consider the opinion of plaintiff's chiropractor. Dkt. #8-1, pp.26-29.  Plaintiff also argues that the ALJ failed to

account for the effect of plaintiff's thrice weekly chiropractic and weekly massage therapy appointments on her ability to maintain a regular work schedule. Dkt. #8-1, pp.16-18. Finally, plaintiff argues that the ALJ improperly rejected the consultative examiner's opinion regarding plaintiff's limitation on overhead reaching, which was supported by the medical record. Dkt. #8-1, p.20. Because she was unrepresented at her hearing, plaintiff argues that the ALJ was obligated to question plaintiff about her ability to reach overhead. Dkt. #8-1, p.20. Plaintiff argues that there is no evidence that she could perform the positions identified by the VE if her RFC also included a limitation on overhead reaching. Dkt. #8-1, p.24.

        The Commissioner responds that the ALJ properly determined that the opinion of plaintiff's chiropractor, who is not considered an acceptable medical source, was entitled to little weight because his opinion was inconsistent with the medical evidence of record, including his own treatment notes, as well as plaintiff's activities of daily living.  Dkt. #9-1, pp.18-20. The Commissioner also responds that there is no evidence to suggest that plaintiff's appointments would preclude her ability to engage in substantial gainful employment and notes that her chiropractic appointments lasted 15 minutes. Dkt. #9-1, pp.12-13. The Commissioner argues that the ALJ was not required to adopt Dr. Liu's opinion completely, but was free to fashion an RFC which comported with all of the medical evidence and asserts that the medical record and plaintiff's reported activities of daily living do not indicate any limitation on plaintiff's capacity for reaching overhead. Dkt. #9-1, pp.14-15. The Commissioner further argues that the ALJ engaged in a lengthy and detailed exchange with plaintiff regarding her functional

limitations, yet plaintiff failed to indicate any difficulty reaching overhead. Dkt. #9-1, pp.16-18. The Commissioner argues that the ALJ appropriately weighed all of the evidence of record and that his determination of plaintiff's RFC is supported by substantial evidence. Dkt. #9-1.

In light of the essentially non-adversarial nature of a social security proceeding, it is well accepted that an ALJ has an affirmative duty to develop the administrative record. *See, e.g., Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). This duty is heightened where a claimant properly waives his right to counsel and proceeds *pro se*. *Id.* at 113. More specifically, the ALJ has a duty to adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

An RFC assessment must be based upon all of the relevant evidence in the record, including, *inter alia*, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment, such as frequency of treatment, duration, disruption to routine and side effects of medication. SSR 96-8P, 1996 WL 374184 at *5. Absenteeism due to frequency of treatment is a relevant factor where treatment is medically necessary and related to the conditions for which plaintiff claims disability. *Bellinger v. Comm'r of Soc. Sec'y*, No. 3:17-CV-1692, 2018 WL 6716092, at *2 (D. Ct. Dec. 21, 2018). In *Bellinger*, for example, the matter was remanded where the ALJ failed to account for the mechanics of plaintiff's weekly anemia treatments of 2-3 hours duration (with one month break every ten weeks), which continued for more

than a year. *Id.* at *2 & *4. Similarly, in *Quinto v. Berryhill*, the matter was remanded where the ALJ failed to address evidence that plaintiff required nebulizer treatments lasting 35-40 minutes per treatment every four or five hours. No. 3:17-CV-24, 2017 WL 6017931, at *5-6 (D.Ct. Dec. 1, 2017). In the instant case, in contrast, while plaintiff consistently received chiropractic treatments multiple times per week and received weekly massage during a portion of the relevant time period, the medical record documents that these treatments lasted 15 minutes and there was no evidence that such appointments could not be scheduled to accommodate a full-time work schedule.

Plaintiff's chiropractor, John Ward, D.C., signed disability certificates indicating that plaintiff was totally incapacitated between September 2, 2014 and December 2, 2016. Dkt. #6, pp.523-530 & 547-565. On July 12, 2016, Dr. Ward completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination for the New York State Office of Temporary and Disability Assistance ("Employability Assessment"), diagnosing plaintiff with displacement of cervical intervertebral disc without myelopathy and displacement of lumbar or thoracic intervertebral disc without myelopathy. Dkt. #6, pp.534-535 & Dkt. #8-1, p.15 n.7. Dr. Ward drew a straight line under the very limited category on a functional limitation chart listing walking, standing, sitting, lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, and using hands, but stopped short of reaching the listing for stairs or other climbing. Dkt. #6, p.535.

The ALJ gave little weight to the disability certificates because they offered no functional analysis of plaintiff's work-related abilities and opined upon an

issue reserved for the Commissioner. Dkt. #6, p. 24. With respect to the Employability Assessment, the ALJ noted that although Dr. Ward was a treating provider, he was not an acceptable medical source. Dkt. #6, p.24. The ALJ then noted that Dr. Ward's extreme limitations were generally inconsistent with his own treatment notes, which only documented reduced range of motion with slow improvement with treatment and also generally inconsistent with the overall record, which often noted lack of distress, normal gait, 5/5 overall muscle strength, and the extent of plaintiff's daily activities, including daily childcare and cooking. Dkt. #6, p.24. In addition, the ALJ noted that Dr. Ward's use of a single line down the column pertaining to physical limitations, including an indication that plaintiff was very limited in seeing, hearing or speaking suggested that he had put little effort into completing the form. Dkt. #6, p.24.

It is well established that the ultimate question of disability is reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999). Furthermore, because a chiropractor does not qualify as an acceptable medical source, his opinion is not considered a medical opinion and is not, therefore, entitled to any particular deference. *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995). However, an ALJ must evaluate every medical opinion it receives, including those from other sources such as chiropractors, based upon considerations including: (1) how long the source has known plaintiff and the frequency of treatment; (2) consistency of the opinion with other evidence; (3) degree to which the source presents relevant evidence to support the opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the plaintiff's impairment; and (6) any other

factors which tend to support or refute the opinion. *Pacholczak v. Berryhill*, No. 16-CV-907, 2018 WL 1406731, at \*4 (W.D.N.Y. Mar. 21, 2018).

As the ALJ noted, standardized check box forms such as the one at issue are only marginally useful for purposes of creating a meaningful and reviewable factual record. *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004). Moreover, the ALJ properly noted that Dr. Ward's attention to detail in completing the form was suspect, given plaintiff's reported ability to see, hear and talk without any pain or discomfort. Dkt. #6, p.202. Furthermore, the ALJ appropriately determined that the extent of plaintiff's limitations was not supported  by his treatment notes, which consistently indicated nothing more than slow improvement with cervical, thoracic and lumbar joint manipulation (Dkt. #6, pp.355-502), or the overall record, which - notwithstanding MRI findings of mild spondylosis and disc bulge at C4-5, minimal central disc protrusion at C3-4, minimal to mild disc bulges at C2-3, C5-6 and C6-7 and mild disc bulges at L4-5 and L6-S1 (Dkt. #6, pp.337 & 339), and consistent limitations in plaintiff's cervical and lumbar range or motion noted throughout the medical records - generally observed lack of acute distress, normal gait, 5/5 bilateral muscle strength in the upper extremities, and activities of daily living beyond the limitations suggested by Dr. Ward. For example, plaintiff reported that she was able to dress, bathe and groom herself, wash laundry, clean, shop, prepare meals and care for her two-year old son. Dkt. #6, pp.199 & 510. Accordingly, substantial evidence supports the ALJ's determination to afford little weight to Dr. Ward's opinion as to the severity of plaintiff's limitations as set forth in the Employability Assessment.

On January 6, 2016, plaintiff underwent a consultative examination with Hongbiao Liu, M.D. Dkt. #6, p.503. Dr. Liu observed that plaintiff's gait and stance was normal and that she was able to get on and off the exam table without assistance and rise from a chair without difficulty. Dkt. #6, p.504. Plaintiff could not perform heel walking but could walk on toes. Dkt. #6, p.504. Her squat was 15%. Dkt. #6, p.504. Her cervical and lumbar spinal flexion and extension were limited and her straight leg raising test was positive. Dkt. #6, p.505. The range of motion in her shoulder was also limited. Dkt. #6, p.505. Dr. Liu opined that plaintiff had mild to moderate limitation for prolonged walking, bending, kneeling and overhead reaching. Dkt. #6, p.506.

The ALJ gave great weight to Dr. Liu's opinion that plaintiff has a mild to moderate limitation for prolonged walking, bending and kneeling because it was consistent with plaintiff's often noted lack of distress, conservative treatment history, stable gait and the extent of her daily activities. Dkt. #6, p.23. However, the ALJ gave little weight to Dr. Liu's opinion that plaintiff has mild to moderate limitation in overhead reaching because plaintiff had not made significant reaching complaints, and aside from reduced shoulder range of motion at her consultative examination, musculoskeletal evaluation of plaintiff during treatment did not document range of motion deficits in her shoulder. Dkt. #6, pp.23-24. In addition, the ALJ noted that plaintiff is able to perform childcare, cleaning, cooking and shopping, which supported a finding that plaintiff did not require reaching limitations. Dkt. #6, p.24.

An ALJ who chooses to adopt only portions of such a medical opinion must explain the decision to reject those portions afforded less weight. *Pritchard v.*

*Comm'r of Soc. Sec.*, No. 18-CV-1460, 2020 WL 553575, at \*4 (W.D.N.Y. Feb 4, 2020);
*Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at \*8 (E.D.N.Y. Jan. 12, 2018)
(ALJ must have a sound reason for using a portion of a medical source opinion to
support a finding while rejecting another portion of that opinion). In the instant case,
contrary to the ALJ's determination, plaintiff complained of left arm pain in the
emergency room on August 28, 2014 following a motor vehicle accident (Dkt. #6,
p.318); licensed massage therapist David Hood noted plaintiff's complaints of pain and
stiffness in the muscles of her neck, shoulders and low back during his treatment of
plaintiff between September 8, 2014 and March 3, 2015 (Dkt. #6, pp.575-588); plaintiff
complained of bilateral shoulder pain on September 10, 2014, prompting Dr. Ward to
add shoulder injury to his diagnosis of plaintiff (Dkt. #6, pp.357-502); spinal surgeon
Edward Simons, M.D. noted plaintiff's complaints of continued problems with pain in her
posterior neck radiating into the shoulders and observed increased neck pain when
plaintiff abducted both shoulders on July 21, 2015 (Dkt. #6, pp.343-344); plaintiff's pain
management specialist, Cheryle R. Hart, M.D., noted plaintiff's complaints of, *inter alia*,
pain in the left upper extremity between October 17, 2015 and November 2, 2016 (Dkt.
#6, pp.832-860); and plaintiff completed a function report on October 28, 2015 stating
that reaching causes sharp pain in her back. Dkt. #6, p.202. In light of this evidence,
the ALJ's explanation for rejecting Dr. Liu's overhead reaching limitation is not
supported by substantial evidence.

For the opinion of a VE to constitute substantial evidence, the hypothetical
questions posed to the VE must reflect all of the plaintiff's limitations that are supported

by medical evidence in the record. *May v. Comm'r of Soc. Sec'y*, 17-CV-1347, 2019 WL 2717991, at *3 (W.D.N.Y. June 28, 2019). Where the application of correct legal principles to the record could lead to only one conclusion, however, remand for reconsideration is not required. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, for example, plaintiff could still perform the positions identified by the VE with the inclusion of all of plaintiff's limitations, the error will be considered harmless. *Hawkey v. Comm'r of Soc. Sec*., No. 5:15-CV-996, 2016 WL 6833059, at *4 (N.D.N.Y. Oct. 24, 2016).

In the instant case, the positions identified by the VE require frequent reaching. *See* Dictionary of Occupational Titles ("DICOT"), 205.367-014 Charge-Account Clerk, 1991 WL 671715; DICOT 209.587-010 Addresser, 1991 WL 671797; DICOT 249.587-018 Document Preparer, 1991 WL 672349. The SSA defines reaching as "extending the hands and arms in any direction." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). Thus, reaching includes overhead reaching. *Lockwood v. Comm'r of Soc. Sec'y*, 914 F.3d 87, 92 (2d Cir. 2019). "However, a moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity." *Jennifer Lee W. v. Berryhill*, No. 2019 WL 1243759, at *5 (N.D.N.Y. Mar. 18, 2019). Because an RFC limiting plaintiff to frequent reaching would account for a mild to moderate limitation for overhead reaching, plaintiff would still be capable of performing the jobs identified by the VE had the ALJ included the consultative examiner's overhead reaching limitation in his hypothetical. *See May*, 2019 WL 2717991, at *4.  Accordingly, any error by the ALJ in failing to adopt the consultative

examiner's opinion that plaintiff has a mild to moderate limitation in overhead reaching was harmless.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
            **September 25, 2020**

                                              _s/ H. Kenneth Schroeder, Jr._
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**

-14-